# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PARKS HERITAGE FEDERAL CREDIT
UNION,

                        Plaintiff,

        -against-

FISERV SOLUTIONS, INC.,
FISERV SOLUTIONS, LLC, and
FISERV, INC.,

                        Defendants.

Index No. 654871/2016

Date Index No. Purchased: 09/14/2016

**SUMMONS WITH NOTICE**

## TO THE ABOVE-NAMED DEFENDANTS:

FISERV SOLUTIONS, INC.
℅ The Prentice-Hall Corporation System, Inc.
80 State Street
Albany, New York  12207

FISERV SOLUTIONS, LLC
℅ Corporation Service Company
80 State Street
Albany, New York  12207

FISERV, INC.
℅ Corporation Trust Center
1209 Orange Street
Wilmington, Delaware  19801

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff's attorneys a

notice of appearance or demand for a complaint within twenty days after service of this

Summons with Notice, exclusive of the day of service, or within thirty days after service is

complete if this Summons with Notice is not personally delivered to you within the State of New

York.  If you fail to appear or serve a demand for a complaint, a judgment will be entered against

you by default for the relief demanded below.

**YOU ARE HEREBY NOTIFIED** that the nature of this action is set forth in the annexed Exhibits 1, 2, and 3, which are incorporated herein by reference.  Plaintiff's claims include claims for breach of contract, conversion, breach of fiduciary duties, breach of bailee duties, fraud, constructive fraud, negligent misrepresentation, negligence, gross negligence, tortious interference with Plaintiff's contracts and prospective economic advantage, unjust enrichment, deceptive trade acts and practices, mandatory and prohibitory injunctions, and a declaration of Plaintiff's rights.  The relief Plaintiff seeks—damages, injunctive relief, and declaratory relief—is equitable and legal.

If you fail to appear, judgment will be entered against you by default for:

(i)      money damages in excess of $2,500,000, plus attorneys' fees, costs, disbursements, additional allowances, and the maximum prejudgment and postjudgment interest allowed by law;

(ii)     an injunction mandating that you and your employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities, return Plaintiff's property;

(iii)    an injunction prohibiting you and your employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities, from interfering with Plaintiff's property and engaging in deceptive trade acts and practices;

(iv)    a declaration that your acts, omissions, and misrepresentations permit Plaintiff to terminate its agreement(s) with you without liability to you;

-2-

and

(v)     any further relief that may be necessary to achieve justice.

Plaintiff designates New York County as the place of trial under CPLR § 509.

Dated: New York, New York
September 14, 2016

VEDDER PRICE P.C.

By: /s/ Charles J. Nerko
Charles J. Nerko
Joel S. Forman
1633 Broadway
New York, New York  10019
(212) 407-7700
cnerko@vedderprice.com
jforman@vedderprice.com

*Attorneys for Plaintiff*
*Parks Heritage Federal Credit Union*

-3-

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 09/14/2016

# EXHIBIT 1

# VedderPrice

Chicago
New York
Washington, D.C.
London
San Francisco
Los Angeles
vedderprice.com

July 1, 2016

Charles J. Nerko
Attorney at Law
+1 212 407 6933
cnerko@vedderprice.com

**BY OVERNIGHT COURIER**

Fiserv Solutions, Inc.
4897 Lake Park Blvd. # 200
Salt Lake City, UT  84120-8207

Re:     Parks Heritage Federal Credit Union

Ladies and Gentlemen:

We represent Parks Heritage Federal Credit Union (the "**Credit Union**") in connection with its claims against Fiserv Solutions, Inc. and its successors, agents, and affiliates ("**Fiserv**," "**you**," or "**your**").

The claims arise out of the parties' relationship and a Master Agreement as may have been amended or supplemented (the "**Agreement**") between you and the Credit Union.

**Notice of Breach and Demand to Cease
Conversion of Credit Union Property**

We hereby notify you that you are in material breach of the Agreement.  As you are no doubt aware, Fiserv's performance under the Agreement has been plagued with multiple deficiencies.  We briefly recount below some examples of Fiserv's breaches of the Agreement, which, individually and collectively, are material.  The examples in this notice are illustrations only.  All prior communications between you and the Credit Union that evidence or concern breaches of the Agreement are incorporated into this notice by reference.

***Fiserv has destroyed the Credit Union's information.***  On or about February 10, 2016, the Credit Union notified Fiserv that data in the Credit Union's "Cash Transaction/Suspicious Activity Report" was missing.  This destruction of the Credit Union's information occurred after Fiserv performed a claimed "upgrade" to its system.  Despite due demand, Fiserv has refused to provide this information to the Credit Union.  Indeed, Fiserv advised the Credit Union that its information has been permanently deleted.

***Fiserv has repeatedly denied the Credit Union access to information and funds, compromised the integrity of the Credit Union's information, and misrepresented information to the Credit Union:***

- Members of the Credit Union have repeatedly and improperly been locked out of their online banking accounts.  When these members attempt to log in, Fiserv presents security questions that do not correspond with the members' accounts,

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, and with Vedder Price (CA), LLP, which operates in California.

Fiserv Solutions, Inc.
July 1, 2016
Page 2

or misrepresented to the members that the answers to their security questions were incorrect.  Based upon these false representations, Fiserv has repeatedly led others to believe that member accounts were hacked or that members were victimized by identity theft. This problem has not been fixed by Fiserv despite persisting for several months, requiring the Credit Union to manually perform account resets for members and deal with the associated customer complaints and distress of being locked out of a bank account and apparently being victimized by a criminal.

- Over the weekend of November 14-15, 2015, Credit Union members were unable to use their debit cards, as their transactions were improperly and repeatedly being denied due to a Fiserv problem.  This required weekend work and troubleshooting by Credit Union personnel.  On or about April 21, 2016, debit cards were again unusable due to a Fiserv problem.

- On 42% of the business days in January, 2016[1] the Credit Union was denied access to the CUSA system and needed to place service calls to Fiserv so that its access can be restored.  Thereafter, Fiserv continues to intermittently deny the Credit Union access to this system.

- On or about February 16, 2016, Fiserv falsely represented in a delinquency report that a member's account was 505 days past due.  As a result of Fiserv's false representations, this member was denied access to her overdraft line of credit and improperly charged two non-sufficient fund fees.

- On or about June 23, 2016, Fiserv falsely represented the principal, interest, and late fee on an account, causing the member to be improperly notified of being late and delinquent.

- A Fiserv bug has been preventing debit cards from overdrafting properly.  For example, on or about September 25, 2015, overdraft instructions were not honored when members made debit purchases that required an overdraft.  This resulted in members experiencing unexpected declinations, or improper negative account balances and associated fees.

- In March and May of 2016, Fiserv did not properly credit dividends on members' CDs.

- Members have been repeatedly denied access to the Virtual Branch and Mobile Banking systems.  For example, on or about February 5 and 9, 2016 the Credit Union's members were denied access to these systems.

---

[1]   The Credit Union was denied access to the CUSA system on or about January 4, 7, 11, 15, 20, 22, 25, and 26, 2016.

Fiserv Solutions, Inc.
July 1, 2016
Page 3

- On or about January 21 and 22, 2016, the Virtual Branch and Mobile Banking systems had repeatedly been unable to display member balances, instead displaying the text "unavailable" or a series of stars instead of a dollar amount.

- Fiserv has misrepresented the amount of funds in members' accounts and other account information. For example, on or about January 11, 2016, the Fiserv system indicated that a member account with an actual balance of $37 had only $17 in it. In early March, 2016, there was a disparity in the account balances Fiserv reported to the member and the Credit Union. Meanwhile, another member had transactions missing from the member's account history.

- On or about June 17, 2016, the Credit Union attempted to open an account for a new member. Fiserv instead allowed the reopening of an old account and mixed the new member's account information with the information from an inactive member's account.

- On or about January 25, 2015, the Loan Desk system was unable to furnish a credit report requested by the Credit Union.

***Fiserv's software is inundated with bugs and defects.*** In addition to the problems described above, Fiserv's software is inundated with flaws:

- On or about January 22, 2016 and May 12, 2016, a Credit Union staff member using the CUSA system's batch processing functionality received an application error with a red X appearing across the screen when attempting to post ACH exceptions. During the most recent recurrence of this error, Fiserv corrupted the corresponding files, causing the Credit Union to miss the ACH return deadline.

- On or about January 21, 2016, Fiserv did not permit the Credit Union to change the default transfer codes for loan payments.

- The remote check capture system has been unusable. The system underwent an ostensible "upgrade" that Robert Stacker of Fiserv represented would improve security, but that actually resulted in delayed deposits and other bugs. Among the problems with the remote check capture system is the system's inability to merge check images into a daily file and its inability to place automatic holds on remote capture items.

- On or about March 8, 2016 and continuing through the present, Fiserv has not permitted the Credit Union to open up IRA CDs.

- The member relationship management tools have not been functioning. For example, tellers are unable to display information on member data screens that would permit tellers to make cross-selling product recommendations, causing the Credit Union to lose sales opportunities.

Fiserv Solutions, Inc.
July 1, 2016
Page 4

- On or about August 25, 2014, the Credit Union received error messages when accessing and making changes to the cross-account transfer menu.  Fiserv failed to fix this bug until early 2016—allowing this known issue to persist for over a year.

- In 2014, the health savings account contribution limit was incorrectly set for members, exposing members to adverse tax consequences and liabilities.

- On or about April 8, 2016, Fiserv presented the Credit Union with a "copy to clipboard, continue, exit application" error message every time account records were retrieved.

- On or about April 14, 2016, the Fiserv application unexpectedly exited when the Credit Union attempted to process a check.

- On or about April 15, 2016, Fiserv did not permit members to make instant payments through Popmoney.

- Fiserv repeatedly has been unable to print information.  In May, 2016, Fiserv was causing a printer to print blank pages, which persisted for over a week before Fiserv addressed this issue.  On or about March 22, 2016, Fiserv did not permit checks, delinquency notices, CDs, and CD delinquency notices to be printed.  Prior to that, over a several-week period in early 2016, Fiserv would not print some data, instead printing the text "unavailable" or a series of stars instead of a dollar amounts.  Previously, Fiserv's printed output was a series of unintelligible symbols from about November 30, 2015 through December 23, 2015.

- Fiserv is not compatible with Windows 10.

*Fiserv has violated legal requirements:*

- Fiserv has failed to provide the required TILA-RESPA disclosures for loans.

- Fiserv has failed to provide the disclosures and notices to members required under Regulation CC when an extended hold is applied.

- Fiserv has failed to check accounts and loan disbursements for OFAC compliance.

- Fiserv's text messaging alerts incorporated as part of the Virtual Branch System may violate the Telephone Consumer Protection Act.

- A Fiserv error caused a loan delinquency notice to be sent to a member, in violation of a bankruptcy stay.

Fiserv Solutions, Inc.
July 1, 2016
Page 5

***Fiserv's performance under the Agreement has been marked with repeated incidents of bad faith:***

- Despite the Credit Union paying a monthly fee for ongoing services from Fiserv, Fiserv has improperly solicited additional fees and contracts from the Credit Union for upgrades necessary for legal compliance or continued viable use of the software. For example, in a May 31, 2016 notice, Fiserv advised the Credit Union that its software was incompatible with Windows 10 and requested that the Credit Union pay additional fees to ensure compatibility with this industry standard operating system.

- Fiserv overcharges the Credit Union for inactive members. Fiserv has stated that the only way to avoid these charges is for the Credit Union to manually generate a report, and then manually deactivate each member. Fiserv knows these members are inactive and, upon information and belief, could readily identify and deactivate these members without requiring the Credit Union to engage in a cumbersome manual process.

- Despite Fiserv knowing of the Credit Union's operating hours, Fiserv has a pattern of waiting until after the close of business before attempting to address the Credit Union's concerns, causing Credit Union employees to work overtime or concerns to be unaddressed until subsequent business days.

Fiserv promises that it provides "superior member service and operational efficiency," with "'out of the box' functionality" that allows credit unions to "not only retain, but attract members and strengthen existing relationships," while allowing "tellers [to] work at an increased speed."[2] Yet it is evident that Fiserv's repeated failures and deficiencies are not providing the Credit Union with the promised benefits. Accordingly, the Credit Union client demands that you immediately take all appropriate actions to cure these breaches and that you reimburse the Credit Union for its damages. Notwithstanding the foregoing, Fiserv's actions and omissions have left the Credit Union with the conviction that Fiserv has repudiated its obligations and that there is no genuine prospect of a cure. Accordingly, this leaves little room but to enforce the Credit Union's rights to terminate the Agreement and seek damages from Fiserv.

Moreover, some of Fiserv's acts have resulted in the loss, destruction, or improper withholding of the Credit Union's information. These acts constitute conversion, and the Credit Union demands that complete and accurate copies of its information be returned to the Credit Union in a usable form reasonably acceptable to the Credit Union.

### Notice of Invocation of Dispute Resolution Procedures

Based on the foregoing, the Credit Union's claims against Fiserv include, without limitation, claims for breach of contract, anticipatory breach of contract, breach of the covenant of good faith and fair dealing, conversion, breach of fiduciary duties, breach of bailee duties, fraud, negligent misrepresentation, tortious interference with the Credit Union's business relationships, unjust

---

[2]   *See* https://www.fiserv.com/industries/credit-unions/account-processing-platforms/cusa.aspx.

Fiserv Solutions, Inc.
July 1, 2016
Page 6

enrichment, and deceptive trade acts and practices. By this notice, the Credit Union commences informal efforts to work with you in good faith to resolve this dispute before commencing litigation. Accordingly, in accordance with Section 9 of the Agreement, the Credit Union requests that you promptly designate an officer of Fiserv with authority to bind Fiserv and to meet to resolve these claims.

### Compliance Audit

In accordance with Section 10 of the Agreement, the Credit Union requests that Fiserv promptly provide all documentation relating to the amounts invoiced by Fiserv in the prior twelve-month period, including, without limitation, all documents concerning Fiserv's performance or non-performance of the Agreement.[3]

### Preservation Notice

As circumstances have arisen that may foreseeably give rise to a legal proceeding, you must preserve all documents, things, and electronically stored information that may be potentially relevant, including, without limitation, complete and accurate copies of Credit Union information. The duty to preserve potentially relevant materials arises under applicable law and not this letter, so your duties are not in any way limited by this letter. If you fail to preserve materials as required, our client will rely on this letter as notice of your preservation obligations.

*          *          *

This notice is without prejudice to any of the Credit Union's rights, powers, privileges, remedies and defenses, now existing or hereafter arising, all of which are hereby expressly reserved. Without limitation, the Credit Union reserves the right to amend, update, supplement, modify, increase, withdraw, or otherwise change its claims. By providing this notice or taking any action in connection therewith, including, without limitation, invoking the dispute resolution provisions of the Agreement, our client is not (a) in any manner whatsoever waiving or relinquishing any rights it may have, including, without limitation, any right to terminate or rescind the Agreement; (b) electing any remedy which waives or otherwise affects any other remedy; (c) acknowledging or admitting any liability; (d) limiting its claims to the amounts or theories set forth therein; or (e) estopped or prevented from taking any other action or position.

While we are authorized to take all appropriate actions to zealously protect the Credit Union's interests, we hope that this matter can be amicably resolved. Please direct any further communications regarding this matter to me or Joel S. Forman at jforman@vedderprice.com.

Very truly yours,

*Charles Nerko*

Charles J. Nerko

---

[3]   For the avoidance of doubt, the Credit Union does not request Fiserv's "assistance" in connection with the Credit Union's audit of these documents. Thus, such documents should be provided without charge to the Credit Union.

# EXHIBIT 2

# VedderPrice

Chicago
New York
Washington, D.C.
London
San Francisco
Los Angeles
vedderprice.com

July 21, 2016

Charles J. Nerko
Attorney at Law
+1 212 407 6933
cnerko@vedderprice.com

**BY OVERNIGHT COURIER AND EMAIL**

Fiserv Solutions, Inc.
4897 Lake Park Blvd. # 200
Salt Lake City, UT  84120-8207
Attn: Elizabeth Co, Esq. and Angie Michelini, Esq.

Re:  <u>Parks Heritage Federal Credit Union – Supplemental Notice of Breach</u>

Dear Mses. Co and Michelini:

We represent Parks Heritage Federal Credit Union (the "**Credit Union**") in connection with its claims against Fiserv Solutions, Inc. and its successors, agents, and affiliates ("**Fiserv**," "**you**," or "**your**").  The claims arise out of the parties' relationship and a Master Agreement as may have been amended or supplemented (the "**Agreement**") between you and the Credit Union.

On July 1, 2016, the Credit Union served a Notice of Breach and Demand to Cease Conversion of Credit Union Property (the "**Notice of Breach**"), with an accompanying demand for a compliance audit in accordance with Section 10 of the Agreement.

The Credit Union is providing this supplemental notice of breach in an abundance of caution and specifically denies that serving a supplemental notice of breach is a requirement for exercising any of the Credit Union's rights, powers, privileges, remedies and defenses against Fiserv.  As with the Notice of Breach, the examples in this notice are illustrations only.  In addition to the breaches that were described in the Notice of Breach, Fiserv has continued to materially breach the Agreement:

- Despite the Credit Union exercising its audit rights under Section 10 of the Agreement, Fiserv has refused to provide the requisite "documentation supporting the amounts invoiced by Fiserv."  Instead of permitting an audit of its invoices, Fiserv has re-provided copies of previously submitted invoices, without the required supporting documentation.

- On or about July 11, 2016, the online banking system was inaccessible.

- On or about July 13, 2016, a member attempting to access Popmoney was denied access to that system with the following error message: "You will need to set up security questions to send money with Popmoney. For help, log in to online banking or call 518-926-4700."

- Fiserv has denied the Credit Union access to PIN-protected credit reports and no

1633 Broadway, 47th Floor  |  New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, and with Vedder Price (CA), LLP, which operates in California.

Fiserv Solutions, Inc.
July 21, 2016
Page 2

longer permits them to be retrieved, despite Fiserv previously representing to the Credit Union that Fiserv has this functionality.

For these reasons and those explained in the Notice of Breach, the Credit Union continues to regard Fiserv as being in material breach the Agreement, and that there is no genuine prospect of a cure. Accordingly, the Credit Union reiterates and renews the demands in the Notice of Breach.

Further, the documents furnished by Fiserv in connection with the Credit Union's audit neither support nor establish Fiserv's entitlement to the amounts that it invoiced the Credit Union. In accordance with Section 10 of the Agreement, and without waiver of the Credit Union's other rights and remedies, the Credit Union demands that Fiserv promptly remit to the Credit Union the payments it made to Fiserv.

All communications between you and the Credit Union that evidence or concern breaches of the Agreement are incorporated into this notice by reference. This notice is without prejudice to any of the Credit Union's rights, powers, privileges, remedies and defenses, now existing or hereafter arising, all of which are hereby expressly reserved.

Very truly yours,

Charles J. Nerko

# EXHIBIT 3

# VedderPrice

Chicago
New York
Washington, D.C.
London
San Francisco
Los Angeles
vedd.erprice.com

August 22, 2016

Charles J. Nerko
Attorney at Law
+1 212 407 6933
cnerko@vedderprice.com

**BY OVERNIGHT COURIER AND EMAIL**

Fiserv Solutions, Inc.
4897 Lake Park Blvd. # 200
Salt Lake City, UT  84120-8207
Attn: Elizabeth Co, Esq. and Angie Michelini, Esq.

Re:   Parks Heritage Federal Credit Union – Second Supplemental Notice of Breach

Dear Mses. Co and Michelini:

We represent Parks Heritage Federal Credit Union (the "**Credit Union**") in connection with its claims against Fiserv Solutions, Inc. and its successors, agents, and affiliates ("**Fiserv**," "**you**," or "**your**").  The claims arise out of the parties' relationship and a Master Agreement as may have been amended or supplemented (the "**Agreement**") between you and the Credit Union.

On July 1, 2016, the Credit Union served a Notice of Breach and Demand to Cease Conversion of Credit Union Property (the "**Notice of Breach**"), with an accompanying notice that the Credit Union was invoking the dispute resolution procedures under Section 9 of the Agreement and commencing informal efforts to work with Fiserv to resolve the dispute before commencing litigation.  On July 21, 2016, the Credit Union served a supplemental notice of breach (the "**Supplemental Notice of Breach**").

The Credit Union is providing this second supplemental notice of breach in an abundance of caution and specifically denies that serving supplemental notices of breach is a requirement for exercising any of the Credit Union's rights, powers, privileges, remedies and defenses against Fiserv.  As with the prior notices of breach, the examples in this notice are illustrations only.  In addition to the breaches that were described in the prior notices of breach, Fiserv has continued to materially breach the Agreement:

- Despite the Credit Union invoking the dispute resolution provision in Section 9 of the Agreement, Fiserv has failed to make any good-faith efforts to resolve the issues addressed in the notices of breach.

- Fiserv has failed to respond to the Credit Union's settlement proposal within the deadline required by Section 9.

- Fiserv has refused to provide much of the information it agreed to provide to the Credit Union in connection with the good-faith resolution of the Credit Union's claims.

- In accordance with Section 9, Fiserv was required to designate an officer or other

---

1633 Broadway, 47th Floor  |  New York, New York 10019  |  T +1 212 407 7700  |  F +1 212 407 7799

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, and with Vedder Price (CA), LLP, which operates in California.

Fiserv Solutions, Inc.
August 22, 2016
Page 2

management employee with authority to bind Fiserv to meet to resolve the Credit Union's claims.  The Credit Union believes that Ms. Lowman, the individual Fiserv designated for this purpose, was designated in bad faith and lacked sufficient authority to bind Fiserv to any good-faith resolution of the Credit Union's claims.

- Fiserv made an unauthorized withdrawal of funds from a member's account and unlawfully transferred those funds to the Credit Union.

For these reasons and those explained in the notices of breach, the Credit Union continues to regard Fiserv as being in material breach the Agreement, and that there is no genuine prospect of a cure. Accordingly, the Credit Union reiterates and renews the demands in the notices of breach.

All communications between you and the Credit Union that evidence or concern breaches of the Agreement are incorporated into this notice by reference.  This notice is without prejudice to any of the Credit Union's rights, powers, privileges, remedies and defenses, now existing or hereafter arising, all of which are hereby expressly reserved.

Very truly yours,

*Charles Nerko*

Charles J. Nerko

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PARKS HERITAGE FEDERAL CREDIT
UNION,

                    Plaintiff,

              -against-

FISERV SOLUTIONS, INC.,
FISERV SOLUTIONS, LLC, and
FISERV, INC.,

                    Defendants.

Index No. 654871/2016

**PLAINTIFF'S FIRST REQUEST
FOR PRODUCTION OF
DOCUMENTS**

Pursuant to Section 3101 and Rule 3120 of the New York Civil Practice Law and Rules, Plaintiff demands that Defendants produce complete and accurate copies of the requested documents to Plaintiff's undersigned counsel within twenty days after service of these requests.

### Definitions & Instructions

1.      Unless otherwise specified, the documents requested are the responsive documents in your possession, control, or custody that were prepared, written, sent, dated, received, applicable, or in effect at any time up to the date of your compliance with this request.

2.      These requests call for the production of all responsive documents in your possession, custody, or control, or in the possession, custody, or control of your employees, predecessors, successors, parents, subsidiaries, divisions, affiliates, partners, joint venturers, brokers, accountants, financial advisors, representatives, and agents or other persons acting on your behalf, without regard to the physical location of such documents.

3.      In responding to these requests, include documents obtained on your behalf by your counsel, employees, agents, or any other persons acting on your behalf.  If your response is that the documents are not within your possession or custody, describe in detail the unsuccessful

efforts you have made to locate each such document.  If your response is that the documents are not under your control, identify who has such control and the location of the documents.

4.     Each requested document shall be produced in its entirety, and the source of the document shall be identified.  If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible, with an explanation stating why production of the remainder is not possible.

5.     Each page or sheet produced by you is to be marked with a consecutive document control or Bates identification number.

6.     Documents produced in response to these requests shall be produced in full in the same order as they are kept or maintained in the ordinary course of business with any identifying labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein.  Documents that are assembled, collated, grouped, or otherwise attached shall not be separated or disassembled.

7.     Electronically stored information must be produced in its original native format with accompanying metadata.  You shall not convert electronically stored information or documents into any other form, such as paper, .tif or .pdf images, unless such conversion is agreed to by Parks Heritage.

8.     With respect to any document responsive to these requests that is withheld from production in whole or in part for any reason, including a claim of privilege or other protection from disclosure, set forth separately with respect to each document:    (a) the grounds of privilege or protection claimed; (b) each and every basis under which the document is withheld; (c) the type of document; (d) the document's general subject matter; (e) the document's date; and

(f) other information sufficient to enable a full assessment of the applicability of the privilege or protection claims.

9.      To the extent you assert that a document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine, or another protection) as well as non-privileged information, the non-privileged portions of the document must be produced.  For each such document, indicate the portion of the document that is to be withheld by stamping the word "REDACTED" on the document in an appropriate location that does not obscure the remaining text, and set forth the information requested in Instruction No. 8 for the redacted portion.

10.     If there are no documents responsive to any individual request, provide a written response so stating.

11.     If any document was, but no longer is, in your possession, subject to your control, or in existence, include a statement: (a) identifying the document; (b) describing where the document is now; (c) identifying who has control of the document; (d) describing how the document became lost or destroyed or was transferred; and (e) identifying each of those persons responsible for or having knowledge of the loss, destruction, or transfer of the document from your possession, custody, or control.

12.     To the extent you contend that you need not provide discovery of certain responsive electronically stored information on the ground that such information is not readily accessible, you shall identify with particularity: (a) the information that is not readily accessible; (b) the reasons why the information is not readily accessible; and (c) the precise burden and estimated cost associated with the production of the information.

13.     You shall identify, by category or type, any sources containing potentially responsive electronically stored information that you are not searching.  This identification shall provide enough detail to enable Parks Heritage to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information from the identified sources.

14.     These requests shall be deemed continuing, and require further and supplemental responses as additional information or documents become available.

15.     The use of any definition for the purpose of these requests shall not be deemed to constitute an agreement or acknowledgment on the part of Parks Heritage that such definition is accurate, meaningful, or appropriate for any other purpose in this action.

16.     Unless otherwise stated herein, this request covers those documents prepared, generated, compiled, written, authored, read, reviewed, referred to, recorded, sent, transmitted, or utilized, or concerning the period from August 1, 2010 through the date of your response.

17.     Whenever necessary to bring within the scope of this request documents that might otherwise be construed outside its scope: (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses; (b) the connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the discovery request all documents that might otherwise be construed as outside its scope; (c) the use of the singular form of any word includes the plural and vice versa; (d) the term "including" means "including without limitation"; (e) the terms "all", "any", "each", and "every" shall be construed as "all, any, each, and every"; (f) examples of responsive items set out in any request must not be construed to limit the scope of the request; and (g) requests for documents must be read so as to encompass any and all documents responsive to the request.

18.     The term "documents" carries its broadest meaning consistent with Article 31 of the New York Civil Practice Law and Rules, and it means any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations of any kind, including originals, drafts, all nonidentical copies (whether different from the original by reason of any notation made on such copies or otherwise), and any electronically stored information. The term "documents" includes information stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. The term "document" refers to any document now or at any time in your possession, custody, or control.  You are deemed in control of a document if you have any ownership, possession, or custody of the document, or the right to secure the document or a copy thereof from any person having physical possession thereof.

19.     The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

20.     The term "concerning" means consisting of, relating to, referring to, pertaining to, bearing on, reflecting, describing, evidencing, referencing, discussing, constituting, supporting, refuting, concerning, or being in any way logically or factually connected with the matter discussed.

21.     The term "person" means any natural person or any legal entity, including any business or governmental entity or association.

22.     "Plaintiff" or "Parks Heritage" means Parks Heritage Federal Credit Union, its subsidiaries, divisions, predecessors and successors, affiliates, and parents, any partnership or joint venture to which any one or more of them may be a party, and/or each of their employees,

agents, beneficiaries, officers, directors, representatives, consultants, independent contractors, accountants, and attorneys, including any person who served in any such capacity at any time.

23.     The term "Parks Heritage Member" means any member, customer, or client of Parks Heritage or any person known to you that has sought to become a member, customer, or client of Parks Heritage.

24.     "Defendant," "Fiserv," "you," or "your" means Fiserv Solutions, Inc., Fiserv Solutions, LLC, or Fiserv, Inc., their subsidiaries, divisions, predecessors and successors, affiliates, and parents, any partnership or joint venture to which any one or more of them may be a party, and/or each of their employees, agents, beneficiaries, officers, directors, representatives, consultants, independent contractors, accountants, and attorneys, including any person who served in any such capacity at any time.

25.     The term "Financial Institutions" means any banks, credit unions, thrifts, or other financial institutions.

26.     The term "Notices of Breach" means the notices of breach annexed as Exhibits 1, 2, and 3 to the Summons with Notice.

27.     "Agreement" means the Master Agreement(s) between Parks Heritage and Fiserv, including any amendments thereto.

### **Requests for Production**

1.     Documents concerning Communications between you and Parks Heritage.

2.     Documents concerning Communications between you and any Parks Heritage Member.

3.     Documents concerning the Agreement, including documents and Communications relating to its negotiation, drafting, and execution.

4.      Documents concerning the work, services, and things you provided or contemplated providing to Parks Heritage.

5.      Documents concerning the work, services, and things you provided or contemplated providing to any Parks Heritage Member.

6.      Documents concerning Communications concerning Parks Heritage.

7.      Documents concerning Communications concerning any Parks Heritage Member.

8.      Documents concerning any of the allegations or incidents referenced in the Notices of Breach.

9.      Documents concerning the resolution or remedial measures taken concerning the allegations or incidents referenced in the Notices of Breach.

10.      Documents concerning Fiserv's denial of the allegations or incidents referenced in the Notices of Breach.

11.      Notices Fiserv provided to Parks Heritage concerning any *force majeure* event.

12.      Documents concerning any *force majeure* events.

13.      Documents sufficient to show the terms of any insurance coverage for this lawsuit.

14.      Documents concerning the reasonableness of any liquidated damages provision in the Agreement, including your termination fee.

15.      Documents sufficient to identify all persons that are defined as an "Affiliate" under the Agreement.

16.      Documents concerning any digital signature file provided by Parks Heritage in connection with executing the Agreement and any alternative methods Parks Heritage used to execute the Agreement.

-7-

17.     Documents concerning the research and development of the work, services, and things you provided or contemplated providing to or for Parks Heritage.

18.     Documents concerning agreements entered into by you with any person regarding the work, services, and things you provided or contemplated providing to or for Parks Heritage, including licensing agreements, independent contractor agreements, joint venture agreements, or any other type of contractual arrangement.

19.     Documents concerning intellectual property rights or claims asserted by others in the work, services, and things you provided or contemplated providing to or for Parks Heritage.

20.     All web pages maintained, created, or operated by you that relate to or concern the work, services, and things you provided or contemplated providing to or for Parks Heritage.

21.     Documents concerning the training or technical support you provided or contemplated providing to or for Parks Heritage.

22.     Documents concerning Parks Heritage's and any Parks Heritage Member's technical support requests and resolutions, including tickets, priority determinations, screen-sharing sessions, resolutions, and Communications concerning the technical support requests and resolutions.

23.     Documents concerning issues, problems, bugs, performance failures, and defects affecting Parks Heritage or a Parks Heritage Member or reasonably expected to affect Parks Heritage or a Parks Heritage Member, regardless of whether the issue, problem, bug, performance failure, or defect was reported to you by Parks Heritage or by a Parks Heritage Member.

24.     Documents concerning Communications concerning issues, problems, bugs, and defects concerning the work, services, and things you provided or contemplated providing to or for Financial Institutions.

25.     Documents concerning Communications scripts involving individuals providing technical support.

26.     Documents concerning Parks Heritage's Cash Transaction/Suspicious Activity Reports, including the deletion of any information from such reports and the efforts, if any, Fiserv took to restore or furnish this information to Parks Heritage.

27.     Documents concerning Communications concerning any Parks Heritage Member's account passwords, authentication, access codes, security questions, or failed log-ins.

28.     Documents concerning advertising, promotion, marketing, branding, or sales efforts by or for Fiserv concerning the work, services, and things you provided or contemplated providing to or for Parks Heritage, including training provided to your employees and sales force.

29.     Documents concerning the decision to produce, market, or sell the work, services, and things you provided or contemplated providing to or for Parks Heritage.

30.     Documents concerning any focus group or other analysis conducted concerning the work, services, and things you provided or contemplated providing to or for Parks Heritage, whether prior to or after launch.

31.     Documents concerning any decision to discontinue producing, marketing, or selling the work, services, and things you provided or contemplated providing to or for Parks Heritage.

32.     Documents concerning any analysis, evaluation of, or Communications concerning your competitors' work, services, and things.

33.     Documents concerning representations concerning the speed, reliability, suitability, or quality of your work, services, and things, including documents concerning any gains in speed you claim to be attainable through the use of your work, services and things.

34.     Documents concerning Fiserv's document retention/destruction policies, and actual practices.

35.     Documents concerning system logs concerning Parks Heritage's information, including information concerning any Parks Heritage Member.

36.     Documents concerning data storage, backup, and archiving of electronically stored information in Fiserv's possession, custody, or control, including documents concerning your policies and actual practices.

37.     Documents concerning the existence, location, type, technical characteristics, and custodianship of backup and/or archive tapes and media, including cloud services, and the nature and format of the information stored.

38.     Documents sufficient to identify the names and data retention capabilities of electronic Communications systems (including instant-messaging services) used by Fiserv.

39.     Documents concerning your policies and actual practices concerning any electronic Communications systems for transient or auto-deleting Communications (including TigerText or SnapChat).

40.     Documentation provided to users of databases and other applications that have been used to access or store electronically stored information concerning Parks Heritage or a Parks Heritage Member.

-10-

41.     Documents concerning any restrictions in the Telephone Consumer Protection Act or other legally enforceable obligations concerning text messages or automatic telephone dialing systems.

42.     Documents concerning your use of text messaging or automatic telephone dialing systems in connection with the work, services, and things you provided or contemplated providing to or for Parks Heritage.

43.     Documents concerning your policies and actual practices for compliance by you and your customers with the Telephone Consumer Protection Act.

44.     Documents concerning your policies and actual practices for identifying reassigned wireless phone numbers.

45.     Documents concerning your policies and actual practices for stopping text messages or calls placed by an automatic telephone dialing system from reaching a reassigned wireless number (regardless of whether the prior subscriber of the phone number provided prior express consent to receive such text messages or calls).

46.     Documents concerning complaints or opt-out requests concerning text messages or calls placed by an automatic telephone dialing system.

47.     Documents concerning the FCC Declaratory Ruling and Order adopted June 18, 2015, including any changes to your policies or practices made as a result thereof.

48.     Documents concerning your policies and actual practices for compliance by you and your customers with the Truth in Lending Act and the Real Estate Settlement Procedures Act.

49.     Documents concerning your policies and actual practices for compliance by you and your customers with Regulation CC (Title 12, Part 229 of the Code of Federal Regulations).

50.     Documents concerning your policies and actual practices for compliance by you and your customers with Office of Foreign Assets Control regulations.

51.     Documents concerning your policies and actual practices for compliance by you and your customers with bankruptcy stays or bankruptcy court orders.

52.     Documents concerning any changes in applicable law affecting the work, services, and things you provided or contemplated providing to or for Financial Institutions.

53.     Documents concerning your work, services, and things concerning taking acts— or omitting to take acts—that would cause you or a Financial Institution to fail to comply with applicable law.

54.     Documents concerning payments from Parks Heritage.

55.     Documents concerning payments to Parks Heritage.

56.     Documents concerning the invoices issued to Parks Heritage, including documents concerning the amounts invoiced and Fiserv's performance or nonperformance of the invoiced items.

57.     Documents concerning loan desk forms used by or billed to Parks Heritage, including Communications concerning removal of the forms and Fiserv's invoices to Parks Heritage concerning forms Parks Heritage requested be removed.

58.     Documents upon which any of your answers to the interrogatories propounded by Parks Heritage are based, including documents identified, described, or otherwise referenced in any of the answers to the interrogatories.

59.     Documents referenced in preparing your answers to the interrogatories propounded by Parks Heritage.

60.     Documents, including demonstrative aids and summary exhibits, that Fiserv has prepared and/or intends to use at the trial of this case or in any motion practice in this case.

61.     Documents concerning any investigation or investigations of Fiserv by any government agency, including the National Credit Union Administration, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Consumer Financial Protection Bureau, the Federal Financial Institutions Examination Council, the Federal Trade Commission, the Federal Deposit Insurance Corporation, or state attorneys general.

62.     Documents concerning any customer, end user, governmental, or other complaints, disputes, or investigations concerning the work, services, and things you provided or contemplated providing.

63.     Documents concerning Ms. Lowman's authority to resolve Parks Heritage's claims.

64.     The actual databases and media used or operated by Fiserv to store Parks Heritage's information, including information concerning any Parks Heritage Member.

65.     Documents concerning reports or investigations concerning Parks Heritage or any Parks Heritage Member that were conducted by or under the direction of a private investigator.

66.     Organizational charts of Fiserv showing personnel, titles, responsibilities, and reporting hierarchy.

67.     Documents sufficient to identify Fiserv's personnel involved in Fiserv's relationship with Parks Heritage.

68.     Fiserv's personnel handbook and documents related to its corporate policies.

69.    The entire personnel files of all individuals involved in the relationship between Fiserv and Parks Heritage.

70.    Documents concerning evaluations, reviews, recommendations for promotions or demotions, reprimands, or other documents concerning the job performance of Fiserv personnel who were involved in the relationship with Parks Heritage.

71.    Documents concerning disciplinary reports, write-ups, performance improvement plans, job coaching, or other disciplinary matters concerning Fiserv personnel who were involved in the relationship with Parks Heritage.

72.    Documents concerning preemployment, employment, investigatory, or exit interviews of Fiserv personnel who were involved in the relationship with Parks Heritage.

73.    Documents concerning the termination and decision to terminate any Fiserv personnel who were involved in the relationship with Parks Heritage.

74.    Documents concerning the review, preservation, or destruction of any documents concerning this action, including hold notices.

75.    Documents obtained from third parties or nonparties from whom Fiserv has sought formal or informal discovery in connection with this action, including those nonparties upon which Fiserv has served subpoenas.

76.    Documents concerning Communications between Fiserv (including its attorneys) and third parties or nonparties (including their attorneys) from whom Fiserv has sought discovery in connection with this action, including those third parties or nonparties upon which Fiserv has served subpoenas.

77.    Documents concerning your possession of Parks Heritage's information or the information of any Parks Heritage Member.

78.     Documents concerning access, modifications, or deletions—or attempts to access, modify, or delete—Parks Heritage's information or the information of any Parks Heritage Member.

79.     Documents concerning the disposition of Parks Heritage's information or the information of any Parks Heritage Member.

80.     Documents concerning the return of Parks Heritage's or any Parks Heritage Member's information to Parks Heritage or any Parks Heritage Member.

81.     Documents concerning statements of fact made to Parks Heritage or any Parks Heritage Member, including representations about amounts on deposit and transactions, and representations concerning the speed or capabilities of Fiserv's work, services, and things.

82.     Documents concerning contracts between Parks Heritage and any Parks Heritage Member.

83.     Documents concerning any business dealings or relationships between Parks Heritage and any Parks Heritage Member.

84.     Documents sufficient to show any costs or expenses incurred by Fiserv in connection with any work, services, and things marketed or sold or intended to be marketed and sold under or in connection with the Agreement.

85.     Documents sufficient to show the annual volume of sales (in dollars and units) of all work, services, and things sold, directly or indirectly, by Fiserv.

86.     Documents sufficient to show the calculation of the gross profits and net profits realized by Fiserv, directly or indirectly, from the sale of any work, services, and things you provided or contemplated providing to or for Parks Heritage.

87.     Documents sufficient to show the calculation of the gross profits and net profits realized by Fiserv, directly or indirectly, from the sale of any work, services, and things you provided or contemplated providing to or for Financial Institutions.

88.     Documents, on an entity-by-entity basis, concerning Fiserv's assets, liabilities, and net worth.

89.     Your audited financial statements, balance sheets, and profit and loss statements.

90.     Your federal, state, and local income tax returns.

91.     Your bank statements, check registers, and cancelled checks.

92.     Your general ledger.

Dated: New York, New York
       September 14, 2016

                              VEDDER PRICE P.C.


                    By: _Charles Nerko_____
                              Charles J. Nerko
                              Joel S. Forman
                              1633 Broadway
                              New York, New York  10019
                              (212) 407-7700
                              cnerko@vedderprice.com
                              jforman@vedderprice.com

                              *Attorneys for Plaintiff*
                              *Parks Heritage Federal Credit Union*


-16-

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - -x
Parks Heritage Federal Credit Union

Plaintiff/Petitioner,

     -against-                                    Index No. ___654871/2016___

Fiserv Solutions, Inc. et al

Defendant/Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - -x

**NOTICE OF COMMENCEMENT OF ACTION**
**SUBJECT TO MANDATORY ELECTRONIC FILING**

     PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

     NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing

     Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

     The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

     **Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

     **Parties not represented by an attorney: Unrepresented litigants are exempt from efiling. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in e-filing.

Page 1 of 2                                                        EFM-1

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts. gov/efileunrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated:  09/14/2016

/s/ Charles J. Nerko
_____
Signature

Charles J. Nerko
_____
Name

Vedder Price P. C.
_____
Firm Name

1633 Broadway 47th Floor
_____
Address

New York, NY  10019
_____
City, State, and Zip

212-407-7700
_____
Phone

cnerko@vedderprice.com
_____
E-Mail

To:      Fiserv Solutions, Inc.
_____

         Fiserv Solutions, LLC
_____

         Fiserv, Inc.
_____

9/3/15