```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
PARKS HERITAGE FEDERAL CREDIT                                :
UNION,                                                       :
                                                             :
                                   Plaintiff,                :
                                                             :           16-cv-7734 (KBF)
                  -v-                                        :
                                                             :           OPINION & ORDER
FISERV SOLUTIONS, INC. et al.,                               :
                                                             :
                                   Defendants.               :
                                                             X
-----------------------------------------------------------
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 4, 2017

KATHERINE B. FORREST, District Judge:

This is a contractual dispute between a federally chartered not-for-profit credit union, Parks Heritage Federal Credit Union ("Parks Heritage"), and one of its vendors, Fiserv Solutions, Inc., Fiserv Solutions, LLC and Fiserv, Inc. (referred to collectively as "Fiserv"). (Compl. (ECF No. 24).) Parks Heritage originally filed suit in New York State Supreme Court, New York County. (Notice of Removal (ECF No. 1), Ex. A.) On October 3, 2016, Fiserv removed the action to this Court on the basis of diversity jurisdiction. (Id. ¶¶ 5-14.) Plaintiff has now sought to remand the action, arguing that as a federally chartered credit union it is a stateless, national citizen not subject to diversity jurisdiction. (See ECF No. 14.) Plaintiff additionally seeks attorneys' fees and costs incurred in the preparation of its motion. (See id.)

For the reasons set forth below, plaintiff's motion to remand is GRANTED and its request for attorneys' fees and costs is DENIED.

I.      FACTUAL BACKGROUND

This action arises out of an August 2012 agreement (the "Master Agreement") between Parks Heritage and Fiserv Solutions, Inc., pursuant to which Fiserv agreed to provide account processing and other services to Parks Heritage.  (See, e.g., Compl. ¶¶ 10-81; Notice of Removal ¶ 2; id., Ex. A at 6, 13.)  Parks Heritage alleges that Fiserv breached the Master Agreement and committed a host of other business torts—including fraud, negligent misrepresentation, conversion, and violations of its purported bailee duties and New York's Deceptive Trade Practices Act (N.Y. Gen. Bus. Law §§ 349 et seq.).  (Compl. ¶¶ 82-145.)  Plaintiff seeks monetary damages of not less than $2,500,000 along with injunctive and declaratory relief.  (Compl. at 25 ¶ (i); Notice of Removal, Ex. A at 3 ¶ (i).)

The instant motion requires resolution of whether this Court has subject matter jurisdiction over this action based on diversity.  That question, in turn, depends on the parties' respective citizenships.  The Court summarizes the relevant facts here, beginning with Fiserv and then turning to Parks Heritage.  The facts are drawn from plaintiff's complaint and defendant's notice of removal,[1] as well as undisputed facts contained in several declarations[2] and two online profiles of Parks Heritage.[3]

---

[1] See Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000) (ascertaining whether requirements for diversity jurisdiction were met by looking at complaint and notice of removal) (citation omitted).

[2] In support of its notice of removal, defendant submitted declarations by Kate Gehl, outside counsel for Fiserv (Declaration of Kate Gehl, dated October 3, 2016 ("Gehl Decl.", Notice of Removal, Ex. B)) and Eric Nelson, Senior Vice President and Associate General Counsel of Fiserv, Inc. (Declaration of Eric Nelson, dated October 3, 2016 ("Nelson Decl.", Notice of Removal, Ex. C)).  In support of its

2

Fiserv is a group of affiliated entities that share a principal place of business at 255 Fiserv Drive in Brookfield, Wisconsin. (Notice of Removal ¶¶ 8-12; see also Nelson Decl. ¶¶ 3-6.) It is undisputed that defendants are citizens of Wisconsin (and no other state). (Notice of Removal ¶¶ 8-12; see also Compl. ¶¶ 4-5.)

Parks Heritage is a federally chartered, not-for-profit credit union with a principal place of business and single physical location at 5 Murray Street in Glens Falls, New York. (Notice of Removal ¶ 7; Gehl Decl. ¶¶ 3-4.) It was established to "meet[] the credit and savings needs of consumers, especially persons of modest means . . . [and] to promote thrift among its members by affording them an opportunity to accumulate their savings and to create for them a source of credit". (LaPointe Decl., Ex. 2, Art. I § 2.)

Parks Heritage was originally chartered in July 1965 as the "GFH [Glen Falls Hospital] Employees Federal Credit Union". (LaPointe Decl. ¶ 2; see also id., Ex. 1 at 2-3.) At this time, membership was restricted to employees, retirees and immediate family members of the Glens Falls Hospital in Glens Falls, New York and employees of the credit union and their immediate family members. (Id., Ex. 1 at 4.) Over the past few decades, the field of membership has expanded.

---

motion for remand, Parks Heritage submitted a declaration by Anthony LaPointe, its CEO (Declaration of Anthony LaPointe, dated October 13, 2016 ("LaPointe Decl.", ECF No. 16)).

[3] See In re Petition of Germain, 824 F.3d 258, 261 (2d Cir. 2016) (quoting St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005)) (alteration omitted) ("'It is well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint.'"); Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 331 (2d Cir. 2011) (finding it proper for a district court "to look beyond the mere allegations of the complaint to the claims themselves (including supporting documentation) in conducting its analysis" on a motion to remand).

(Id., Ex. 1.)  In May 2006, the credit union changed its name to "Parks Heritage Federal Credit Union" (emphasis added) to reflect, in part, the credit union's growing membership beyond Glen Falls Hospital employees.  (LaPointe Decl. ¶ 2; see also id., Ex. 1 at 14.)  At present, the following categories of individuals are eligible for membership:

> [1]   Employees, independent contractors, or self-employed persons who work regularly in the Health Care Industry in Warren, Washington or Saratoga Counties, New York [as defined].
>
> [2]   Spouses of persons who died while within the field of membership of this credit union; employees of this credit union; persons retired as pensioners or annuitants from the above employment; volunteers; members of the immediate family or household; and organizations of such persons.

(LaPointe Decl., Ex. 1 at 16 (numbering supplied by the Court); see also id., Ex. 2, Art. II § 1.)  The second category is not restricted to individuals residing in New York State.  Once an individual becomes a member of the credit union under either category, and irrespective of residence within (or outside of) New York State, "that person may remain a member until the person or organization chooses to withdraw or is expelled [under the terms of the bylaws]."  (Id., Ex. 2, Art. II § 4.)

Parks Heritage currently has between 3,683 and 4,005 members.  (See National Credit Union Administration, Parks Heritage, http://mapping.ncua.gov/singleresult.a spx?ID=16 933 (last visited Jan. 4, 2017) (3,683 members); National Credit Union Services Organization, Parks Heritage Federal Credit Union, http://ncuso.org/ny/ parks-heritage-federal-credit-union-16933 (last visited Jan. 4, 2017) (4,005 members); see also ECF No. 27 at 7 n.2

(citing websites).)  102 of these members reside outside of New York.  (LaPointe Decl. ¶ 9.)

Parks Heritage provides an array of financial services typical of any consumer banking institution.  (Id. ¶ 4.)  It issues Visa credit and debit cards that may be used at businesses worldwide (id. ¶¶ 23-25), and provides access to loans, online banking, payroll deduction, direct deposit, online bill payment and approximately 60,000 ATMs located throughout the United States and abroad (id. ¶¶ 4, 19).  Members may utilize many of these services remotely through Parks Heritage's interactive website or mobile app without visiting a physical branch.  (Id. ¶¶ 5, 20-22.)  Individuals may also apply to become a member of Parks Heritage online.  (Id. ¶ 20.)

Loans issued by Parks Heritage are often secured by collateral outside of New York.  (Id. ¶ 12).  Parks Heritage currently secures collateral located in California, Idaho, Maine, New Hampshire Pennsylvania, Tennessee, Texas and Vermont.  (Id.)  When a loan is in default, Parks Heritage can, and has, repossessed and resold the subject collateral outside New York.  (Id. ¶¶ 13-17.)  For example, over the past two years, Parks Heritage has repossessed automobiles located in South Carolina, Wisconsin, Arizona, Connecticut and Maine.  (Id. ¶¶ 14-17.)

Parks Heritage also maintains a network of out-of-state business relationships.  (Id. ¶ 31.)  In addition to providing services to individual members, Parks Heritage maintains deposit accounts for five credit unions based in four states other than New York.  (Id. ¶ 11.)  Further, Parks Heritage's personnel are

"co-employed" by ADP Totalsource of CO XXIII, Inc. ("ADP"), a Georgia-based company that serves as their legal employer and issues wages, withholds and pays payroll taxes, maintains workers' compensation coverage, and provides employee benefit, career development, human resources and safety programs. (Id. ¶ 26.) Parks Heritage also invests in credit unions in Iowa and New Jersey and uses an Illinois-based corporate credit union to process transactions. (Id. ¶¶ 29-30.)

## II.   LEGAL STANDARDS

### A.   Motion to Remand

A defendant may remove an action from state to federal court by filing a notice of removal in federal court. See 28 U.S.C. § 1446(a). Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction", 28 U.S.C. § 1441(a), including cases premised on diversity jurisdiction, 28 U.S.C. § 1332. See also Bounds v. Pine Belt Mental Health Care Res., 593 F.3d 209, 215 (2d Cir. 2010). Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States". 28 U.S.C. § 1332(a)(1); see also Bounds, 593 F.3d at 215.

"Once a case has been removed to federal court, a party may move to remand the case to state court." Shapiro v. Logistec USA Inc., 412 F.3d 307, 311 (2d Cir. 2005). The case shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction". 28 U.S.C. § 1447(c). On a motion to remand, the "party seeking removal bears the burden of showing that

federal jurisdiction is proper." Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011) (citation omitted); see also Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction.") (citation omitted). Thus, "[t]o remove a case based on diversity jurisdiction, it is incumbent upon the diverse defendant to aver that all the requirements of diversity jurisdiction have been met." Bounds, 593 F.3d at 215 (citing 28 U.S.C. § 1446); see also 28 U.S.C. § 1446(a) (providing that notice of removal must contain "a short and plain statement of the grounds for removal"). The federal removal statute is to be "strictly construed." Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002). Therefore, "out of respect for the limited jurisdiction of the federal courts and the rights of the states", courts must "resolve any doubts against removability." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks, alteration and citation omitted).

      B.     <u>Citizenship of Federal Credit Unions</u>

The test for determining a party's citizenship within the meaning of 28 U.S.C. § 1332 depends on the nature of the litigant. "'The general rule with respect to federal credit unions is that they are not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship.'" Broadbridge Fin. Solutions, Inc. v. CNBS, LLC, No. 15-cv-4978 (PAC), 2016 WL 1222339, at *1 (S.D.N.Y. Mar. 23, 2016) (quoting TCT Fed. Credit Union v. Cumis Inc. Soc'y, Inc., No. 10-cv-150 (FJS/DRH), 2011 WL 817496, at *2 (N.D.N.Y. Mar. 2,

2011)) (alterations omitted).  "Rather, they are considered stateless 'national citizens' that are not amenable to § 1332(a) jurisdiction." Id. (citing Auriemma Consulting Grp., Inc. v. Universal Sav. Bank, F.A., 367 F. Supp. 2d 311, 314-15 (E.D.N.Y. 2005)).[4]

There is, however, a "limited exception" to this rule.  See TCT Fed. Credit Union, 2011 WL 817496, at *2.  Under this so-called "localization" exception, if a federal credit union's activities are "localized" within a single state, the credit union is deemed a citizen of that state for diversity purposes.  E.g., id.; Broadbridge Fin. Solutions, Inc., 2016 WL 1222339, at *1.  To have "localized" activities does not mean the credit union's activities are exclusive to a state.  To determine whether a federal credit union is "localized" in a particular state, "courts consider the credit union's principal place of business, the location of branch offices, the volume of business transacted in different states, and 'any other evidence that tends to show the local or national nature of the corporation's plans and operations.'"  Broadbridge Fin. Solutions, Inc., 2016 WL 1222339, at *1 (quoting TCT Fed. Credit Union, 2011 WL 817496, at *2); see also Arlington Cmty. Fed. Credit Union, 57 F. Supp. 3d at 594 (quoting Loyola Fed. Sav. Bank v. Fickling, 58 F.3d 603, 606 (11th Cir. 1995)).

In weighing these factors, a court must assess "whether or not the [federal credit union] conducts its activities over a widespread area."  Little League Baseball, Inc. v. Welsh Pub. Grp., Inc., 874 F. Supp. 648, 653 (M.D. Pa. 1995); see

---

[4] The standard for determining the citizenship of federal credit unions is the same as that applicable to federally chartered corporations generally.  See id. at *1 (analyzing citizenship of federal credit union by citing cases discussing federally chartered corporations); TCT Fed. Credit Union, 2011 WL 817496, at **2-3 (same); Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co., 57 F. Supp. 3d 589, 595 (E.D. Va. Oct. 30, 2014) (same).

also Burton v. U.S. Olympic Comm., 574 F. Supp. 517, 522 (C.D. Cal. 1983) (framing inquiry as "whether [a] federally chartered corporation generally had a situs within one state or was authorized to do business and doing business in several states.") (internal quotation marks and citation omitted).  A federal credit union may be "localized" even if it conducts some activities in other states.  See Iceland Seafood Corp. v. Nat'l Consumer Co-op Bank, 285 F. Supp. 2d 719, 724 (E.D. Va. 2003) (citing Loyola Fed. Sav. Bank, 58 F. 3d at 606).  However, it is not "necessarily localized in the state in which its principal place of business is located."  Little League Baseball, Inc., 874 F. Supp. at 653.

    C.    Attorneys' Fees and Expenses

"Under 28 U.S.C. § 1447(c), a district court may award attorneys' fees when it remands a case to state court based on lack of subject matter jurisdiction".  Circle Indus. USA, Inc. v. Parke Constr. Grp., Inc., 183 F.3d 105, 108 (2d Cir. 1999); see also 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").  "[T]he statute does not authorize courts to award attorneys' fees when upholding a removal".  Circle Indus. USA, Inc., 183 F.3d at 109.  "'[A]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.'"  Calabro v. Aniqa Halal Live Poultry Corp., 650 F.3d 163, 166 (2d Cir. 2011) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).

III.  DISCUSSION

    A.  <u>Motion to Remand</u>

Parks Heritage argues that this Court lacks subject matter jurisdiction, requiring remand.  (ECF No. 15 at 4.)  The Court agrees.

Since Fiserv removed the action to this Court on the basis of diversity jurisdiction, (<u>see</u> Notice of Removal ¶¶ 5-14), it bears the burden of establishing that jurisdiction is proper, <u>see</u> <u>Montefiore Med. Ctr.</u>, 642 F.3d at 327.  Here, although the parties agree that the amount in controversy has been satisfied and that defendants are Wisconsin citizens, Fiserv has failed to establish—as it must—that Parks Heritage is not a stateless, national citizen.  <u>See</u> 28 U.S.C. § 1332(a)(1); <u>Broadbridge Fin. Solutions, Inc.</u>, 2016 WL 1222339, at *1.

Fiserv contends that Parks Heritage's activities are "localized" in New York because (1) Parks Heritage has a single branch office in Glens Falls, New York; (2) only 2.5-2.8% of its members—102 out of approximately 3,500-4,000—reside outside of New York; and (3) its members must be employed in the healthcare field in certain New York counties or be related to a member.  (ECF No. 27 at 7; <u>see also</u> <u>id.</u> at 9-16.)  While these facts show that Parks Heritage operates primarily in New York, they do not establish that Parks Heritage's activities are "localized" in New York.

The Court's conclusion in this regard is based on its examination of Parks Heritage's conduct both within and outside of the state.  <u>See, e.g.</u>, <u>Little League Baseball, Inc.</u>, 874 F. Supp. at 653 (requiring examination of whether federally

10

chartered corporation "conducts its activities over a widespread area"); Burton, 574 F. Supp. at 522 (framing inquiry as "whether [a] federally chartered corporation generally had a situs within one state or was authorized to do business and doing business in several states.") (internal quotation marks and citation omitted).  This approach contrasts with Fiserv's, which focuses on Parks Heritage's activities in New York, largely overlooking the description of Parks Heritage's nationwide operations set forth in the uncontested declaration of Parks Heritage's CEO, Anthony LaPointe.  (See LaPointe Decl.)

The LaPointe declaration makes clear that Parks Heritage is authorized to conduct business outside of New York and does so on a regular basis.  See Broadbridge Fins. Solutions, 2016 WL 1222339, at *1 (identifying the "volume of business transacted in different states" and evidence tending to show the "national nature of the corporation's plans and operations" as factors bearing on citizenship of a federal credit union); Burton, 574 F. Supp. at 522 (noting that federally chartered corporations are stateless citizens if they are "authorized to do business and doing business in several states.").[5]

Certain facts demonstrate the non-localized nature of Parks Heritage's operations.  First, Parks Heritage's charter and bylaws do not restrict the scope of its geographic activities to a particular state.  Parks Heritage's purpose—to "meet[] the credit and savings needs of consumers"—is cast broadly and extends beyond New York.  (See id., Ex. 2, Art. I § 2.)  Parks Heritage's membership requirements

---

[5] The facts set forth in the LaPointe declaration are uncontested; Fiserv, however, debates the weight the Court should give them.

11

allow for non-New York resident members.  (See LaPointe Decl., Exs. 1, 2.)  As discussed above, while the first category of potential membership is limited to counties within New York, the second broad category is not.  Under that second category, individuals employed by the credit union (who are employed out of a Georgia corporation) may become members, hospital volunteers residing outside of New York may become members, immediate family members of a Parks Heritage member who live outside New York may become members, and retirees or pensioners of certain healthcare employers may become members.

Second, while it is certainly true that most of Parks Heritage's members reside in New York, Parks Heritage maintains a variety of capabilities that permit even those members to use its financial services outside the state. (Id. ¶¶ 4-5.)  For example, Parks Heritage issues Visa credit and debit cards that may be used at businesses worldwide (id. ¶¶ 23-25), maintains an interactive website and mobile app through which members may utilize online banking services remotely without visiting a physical branch (id. ¶¶ 5, 20-22), and provides access to a network of approximately 60,000 ATMs worldwide (id. ¶¶ 4, 19).  These services can, of course, also be used by the 102 Parks Heritage members residing outside of New York. (See id. ¶ 9.)

Third, in the course of maintaining its loan business, Parks Heritage regularly secures, repossesses and resells collateral in states other than New York. (Id. ¶¶ 12-17.)  It currently has collateral secured in eight states other than New York (id. ¶ 12), and, over the past two years, it has repossessed automobiles in five

12

states other than New York (id. ¶¶ 13-17). Fourth, Parks Heritage deals routinely with several out-of-state business that help run aspects of its business (id. ¶ 31), including a Georgia-based company that "co-employs" its employees (id. ¶ 26), an Illinois-based credit union that processes certain of Parks Heritage's transactions (id. ¶ 29), and, of course, the defendants in this case.

The LaPointe declaration thus reflects that Parks Heritage conducts regular business across state lines and provides financial services to its members on a nationwide basis. These interstate activities are sufficient to support a finding that Parks Heritage is not "localized" in New York. A federal credit union is not "necessarily localized in the state in which its principal place of business is located." See Little League Baseball, Inc., 874 F. Supp. at 653. To the contrary, many courts have held that federally chartered corporations with bases of operations in a particular state are nevertheless stateless, national citizens ineligible for diversity jurisdiction. See, e.g., id. at 654-55 (finding Little League Baseball not "localized" in Pennsylvania where its principal offices were located because, inter alia, it operated leagues, tournaments and regional centers outside that state); Iceland Seafood Corp., 285 F. Supp. 2d at 725-26 (finding federally chartered bank not "localized" in the District of Columbia, its principal place of business, because it made loans to entities in other states, secured collateral in other states and maintained several branch offices in other states); Auriemma Consulting Grp., Inc., 367 F. Supp. 2d at 314 (finding federally chartered bank not "localized" in Wisconsin where it maintained its headquarters and all of its funds because it solicited business online

13

on a nationwide basis, it maintained administrative offices in other states and a majority of its customers were located outside Wisconsin); Burton, 574 F. Supp. at 521-22 (finding U.S. Olympic Committee not "localized" in Colorado where it conducted its daily operations because it had broad authority to conduct business nationwide).  The Court reaches a similar conclusion here.

Upon consideration of the record and light of the fact that the federal removal statute must be "strictly construed", see Syngenta Crop Prot., Inc., 537 U.S. at 32, with all doubts resolved in favor of remand, see In re MTBE Prods. Liab. Litig., 488 F.3d at 124, the Court concludes that Parks Heritage is a stateless, national citizen ineligible for diversity jurisdiction.  Consequently, the Court lacks subject matter jurisdiction and must remand the action back to the state court from which it originated.

B.     Attorneys' Fees and Expenses

In addition to seeking remand, Parks Heritage seeks an award of attorneys' fees and costs incurred due to removal.  (See ECF No. 15 at 10-13.)  While the Court has discretion to award attorneys' fees and expenses in connection with an order of remand, see Circle Indus. USA, Inc., 183 F.3d at 108 (discussing 28 U.S.C. § 1447(c)), it declines to do so here.  Put simply, Fiserv did not "lack[] an objectively reasonable basis for seeking removal".  Calabro, 650 F.3d at 166 (quoting Martin, 546 U.S. at 141)).  Courts have often found removal objectively unreasonable where the removing defendant seeks removal based on an obviously incorrect legal standard.  See Little Rest Twelve, Inc. v. Visan, 829 F. Supp. 2d 242, 245 (S.D.N.Y.

14

2011) ("If a defendant's grounds for removal are not clearly barred by established federal law, then an award of attorney's fees and costs is improper.") (citation omitted); see also Gen. Elec. Capital Corp. v. Cutler, No. 15-cv-4420 (PAE), 2015 WL 7444627, at *2 (S.D.N.Y. Nov. 23, 2015) (collecting Second Circuit cases finding removal objectively unreasonable where defendant premised jurisdiction on an incorrect legal standard); G&H Partners AG v. Wextrust Capital, LLC, No. 07-cv-9803 (DLC), 2008 WL 65102, at *2 (S.D.N.Y. Jan. 4, 2008) (finding removal objectively unreasonable where defendant failed to address controlling authority rejecting asserted basis for removal).

  Here, however, Fiserv's notice of removal alleged facts in support of the correct legal standard.  Fiserv asserts that the two basic requirements for diversity jurisdiction—that the amount in controversy exceed $75,000 and the parties are citizens of different states, see 28 U.S.C. § 1332(a)(1)—have been met.  (See Notice of Removal ¶¶ 5-14.)  Fiserv also asserts that Parks Heritage is subject to diversity jurisdiction because its principal place of business and only physical location are in New York (id. ¶ 7), two factors embedded in the applicable "localization" analysis, see, e.g., Broadbridge Fin. Solutions., Inc., 2016 WL 1222339, at *1.  While the Court ultimately finds remand appropriate, that conclusion results from a fact-intensive analysis of Parks Heritage's operations—facts not necessarily accessible to Fiserv at the time of removal.  The Court will therefore not award attorneys' fees and costs.

IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS plaintiff's motion to remand and DENIES plaintiff's application for costs and expenses.

The Clerk of Court is directed to terminate the motion at ECF No. 14 and to remand this action to New York State Supreme Court, New York County. The Clerk of Court is further directed to administratively terminate the motions at ECF Nos. 32 and 34 as moot.

SO ORDERED.

Dated:     New York, New York
           January 4, 2017

                                        KATHERINE B. FORREST
                                        United States District Judge